1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

11

PIA MCADAMS, on behalf of herself
and those similarly situated,

12

Plaintiff,

13

v.

14

NATIONSTAR MORTGAGE LLC d/b/a
MR. COOPER, a Delaware limited
liability company,

15

16

Defendant.

17

Case No. 3:20-cv-2202-L-BLM

**ORDER GRANTING IN PART
AND DENYING IN PART
DEFENDANT'S MOTION TO
DISMISS**

18
19
20
21
22
23
24
25
26
27

Plaintiff Pia McAdams brings this dispute against Nationstar Mortgage LLC
d/b/a Mr. Cooper ("Defendant").  First Amended Complaint ("FAC") Doc. No. 17
at 1.[1]  Plaintiff alleges five claims against Defendant: (1) violation of California's
Homeowner Bill of Rights; (2) intentional misrepresentation; (3) negligent
misrepresentation; (4) promissory estoppel; and (5) violation of California's Unfair
Competition Law.  FAC ¶¶ 116–67.  Defendant moves to dismiss the claims
pursuant to Federal Rule of Civil Procedure 12(b)(6).  Doc. No. 20-1 ("MTD") at 8.
Plaintiff filed an opposition to Defendant's motion, and Defendant replied.  Doc.
No. 22; Doc No. 23.  For the reasons set forth below, the Court **GRANTS IN**

28

---

[1] All citations to electronically filed documents refer to the pagination assigned by the CM/ECF system.

**PART AND DENIES IN PART** Defendant's motion to dismiss.

## I.   BACKGROUND[2]

Plaintiff's amended complaint originates from Defendant's alleged misconduct during the loan modification and foreclosure process.  FAC ¶ 1.  Plaintiff alleges that Defendant falsely led Plaintiff to believe that Defendant was processing Plaintiff's loan modification application instead of going through with the foreclosure process.  *See id.* ¶ 63.  This deceptive and illegal practice, known as "dual tracking," is the basis for all of Plaintiff's claims.  *See id.* ¶¶ 76–78, 128–30, 140–42, 148, 162.

Plaintiff purchased her former home in August 2004.  *Id.* ¶ 15.  The home was purchased "with a loan obtained from American Wholesale Lender, Inc."  *Id.*  Defendant was the mortgage servicer to Plaintiff's loan.  *Id.* ¶ 17.

Plaintiff received her first loan modification from Defendant in October 2010.  *Id.* ¶ 18.  A few years later, in April 2014, Plaintiff defaulted on her loan.  *Id.* ¶ 19.  Two years later, in December 2016, Plaintiff entered a second loan modification with Defendant.  *Id.* ¶ 21.  Unfortunately, Plaintiff's financial difficulties continued over the next several years.  *See id.* ¶¶ 25–28.  Again, in November 2018, Plaintiff defaulted on her loan and requested a third loan modification from Defendant.  *Id.* ¶¶ 27, 29.

In December 2018, Defendant sent Plaintiff the Borrower Response Package ("Package").  *Id.* ¶ 30.  Defendant uses the Package to assess whether a loan modification is necessary.  *See id.* ¶¶ 32–35.  The Package requests several documents, including income documentation.  *Id.* ¶¶ 33, 35.  The Package "instructed [Plaintiff] to complete the attached documents by January 21, 2019."  *Id.* ¶ 31.  The Package also stipulated:

//

---

[2] Because this matter is before the Court on a motion to dismiss, the Court must accept as true the allegations set forth in the amended complaint.  *See Hosp. Bldg. Co. v. Trs. Of Rex Hosp.*, 425 U.S. 738, 740 (1976).

Once we receive your application, we will provide you with an acknowledgment to let you know whether your application is complete or whether documentation or information is missing. In the event information is missing and the application has not been received too close to a scheduled foreclosure sale to permit us to evaluate your application, we will provide you with a reasonable date within which the missing information must be provided to us.

Prior to our receipt of the missing/complete documents, a foreclosure process may be initiated or if the foreclosure has already been initiated, the foreclosure process will continue until all documents are received unless state law provides otherwise.

*Id.* ¶ 32 (quoting the Package) (emphasis omitted).

Plaintiff submitted the requested documents on January 16, 2019. *Id.* ¶ 37. Defendant did not reply until February 14, 2019. *Id.* ¶ 41. Defendant's response indicated that Plaintiff's application was incomplete because her income documentation was "'illegible[]' and needed to be resubmitted." *Id.* ¶ 42. Defendant requested that Plaintiff resubmit her income documentation by March 15, 2019. *Id.* Plaintiff resubmitted her income documentation on March 8, 2019. *Id.* ¶ 47. Within days, Defendant responded and claimed that the income documentation was still incomplete. *Id.* ¶ 48–49. Defendant encouraged Plaintiff to resubmit the income documentation by April 7, 2019. *Id.* ¶ 52; *see also id.* at 81. Nonetheless, on March 22, 2019, before Plaintiff submitted her income documentation for the third time, Defendant sold Plaintiff's home in a foreclosure sale. *Id.* ¶ 55; *see also id.* at 85.

Relatedly, Plaintiff was a class member in a class action lawsuit ("Class Action") against Defendant. *See* Doc. No. 20-9 at 1; *see also* Doc. No. 20-11 at 1. The Class Action was filed by class representatives Demetrius and Tamara Robinson ("Robinsons") in the U.S. District Court for the District of Maryland.

1  Doc. No. 20-7 at 1.

2        The Robinsons believed that Defendant, as the Robinsons' mortgage

3  servicer, wronged them throughout the loss mitigation process in the following

4  ways.  *See id.* ¶¶ 60–89.  First, the Robinsons alleged that Defendant failed to give

5  them any sort of meaningful correspondence in a timely fashion.  *Id.* ¶¶ 67, 68, 73,

6  74, 76.  Second, the Robinsons alleged that Defendant failed to evaluate all loan

7  modification options for the Robinsons and failed to give the reasons why the

8  Robinsons were not entitled to certain loan modification options.  *Id.* ¶¶ 68, 70, 82,

9  83.  Altogether, these alleged wrongdoings "delayed the loss mitigation process and

10  caused the Robinsons to refrain from looking into other loss mitigation options."

11  *Id.* ¶ 87.

12        In addition, the Robinsons alleged on behalf of the class that Defendant

13  violated 12 C.F.R. § 1024.41 by "instituting foreclosure proceedings while a loss

14  mitigation application or appeal is . . . being processed," or, "dual tracking".  *Id.* ¶

15  58.  However, the Maryland District Court entered summary judgment in favor of

16  Defendant for this dual tracking claim since Defendant had not begun the

17  foreclosure process against the Robinsons.  Doc. No. 22-3 at 17–18.

18        The Class Action concluded with a court approved settlement.  Doc. No. 20-

19  10 at 1.  The settlement released Defendant from:

20
21              [A]ll actions, causes of action, claims, demands,
                obligations, or liabilities of any and every kind that were or
22              could have been asserted by the Class Representative or
                Class Members in connection with the submission of loss
23              mitigation applications during the Class Period. This
                release includes, but is not limited to, claims for statutory
24              or regulatory violations, the Real Estate Settlement
25              Procedures Act, Regulation X, the Maryland Consumer
                Protection Act, unfair, abusive, or deceptive act or practice
26              claims, tort, contract, or other common law claims, or
                violations of any other related or comparable federal, state,
27              or local law, statute, or regulation.
28

Doc. No. 20-8 Ex. 1 at 21.

Despite this release, Plaintiff brings five claims as noted above: (1) violation of California's

Homeowner Bill of Rights; (2) intentional misrepresentation; (3) negligent

misrepresentation; (4) promissory estoppel; and (5) violation of California's Unfair

Competition Law.  AC ¶¶ 116–67.  Defendant moves to dismiss these claims

pursuant to Federal Rule of Civil Procedure 12(b)(6).  MTD at 8.

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss tests the

sufficiency of the complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

Dismissal is warranted where the complaint lacks a cognizable legal theory.

*Shroyer v. New Cingular Wireless Serv., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010)

(citation omitted); *see Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule

12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of

law").  Alternatively, a complaint may be dismissed where it presents a cognizable

legal theory yet fails to plead essential facts under that theory.  *Robertson v. Dean

Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984); *see also Shroyer*, 622 F.3d

at 1041.  In this regard, "to survive a motion to dismiss, a complaint must contain

sufficient factual matter to state a facially plausible claim to relief."  *Shroyer*, 622

F.3d at 1041 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "A claim has

facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct

alleged."  *Ashcroft*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 556 (2007)).

## III.   JUDICIAL NOTICE

As an initial matter, Plaintiff and Defendant request that the Court take

judicial notice of several exhibits.  *See* Doc. No. 20-2 at 2–3; *see also* Doc. No. 22-

4 at 2.

## A. LEGAL STANDARD

"Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6)." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002)). However, "a court may take judicial notice of matters of public record," *Khoja*, 899 F.3d at 999 (quoting *Lee*, 250 F.3d at 689), and of "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading," *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith*, 307 F.3d at 1125–26; *see also* Fed. R. Evid. 201.  A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.  Fed. R. Evid. 201(b); *see also Khoja*, 899 F.3d at 999 (quoting Fed. R. Evid. 201(b)).

## B. DISCUSSION

The Court considers the parties' requests in the order they were presented.

### 1. Defendant's Request for Judicial Notice

Defendant asks the Court to take judicial notice of nine exhibits.  *See* Doc. No. 20-2 at 2–3.

Exhibit one is Plaintiff's first loan modification agreement.  *See* Doc. No. 20-3; *see also* Doc. No. 20-2 at 2. "A court may take judicial notice of matters of public record." *Khoja*, 899 F.3d at 999 (quoting *Lee*, 250 F.3d at 689).   This agreement is public record because it was recorded with the San Diego County Recorder's Office.  Doc. No. 20-2 at 2.  Thus, judicial notice is appropriate for exhibit one.

1   Exhibit four is public information displayed on the California Department of

2   Financial Protection and Innovation website.  California Department of Business

3   Oversight, *Annual Report of Activity Under the California Residential Mortgage*

4   *Lending Act* (2019), https://dfpi.ca.gov/wp-

5   content/uploads/sites/337/2020/07/2019-CRMLA-Annual-Aggregated-Report.pdf.

6   The Court may take judicial notice of public information displayed on government

7   websites when "neither party disputes the authenticity of the website[] or the

8   accuracy of the information displayed therein."  *Daniels-Hall v. Nat'l Educ. Ass'n*,

9   629 F.3d 992, 998–99 (9th Cir. 2010).  Because neither party disputes the

10  authenticity of the website or the accuracy of the information judicial notice is

11  appropriate for exhibit four.  *Daniels-Hall*, 629 F.3d at 998–99.

12  Exhibits two and three are documents that were filed with the U.S.

13  Bankruptcy Court for the Southern District of California.  *See* Doc. Nos. 20-4, 20-

14  5; *see also* Doc. No. 20-2 at 2.  Exhibits five through nine are all documents that

15  were filed with the Maryland District Court.  *See* Doc. Nos. 20-7, 20-8, 20-9, 20-

16  10, 20-11; *see also* Doc. No. 20-2 at 2–3.  Court documents are public record and

17  available for judicial notice.  *Victoria v. City of San Diego*, 326 F. Supp. 3d 1003,

18  1012 (S.D. Cal. 2018).  Thus, judicial notice is appropriate for exhibits two, three,

19  and five through nine.

20  **2.  Plaintiff's Request for Judicial Notice**

21  Plaintiff asks the Court to take judicial notice of two exhibits.  *See* Doc. No.

22  22-4 at 2.

23  Both exhibits are documents that were filed with the Maryland District Court.

24  *See* Doc. Nos. 22-2, 22-3.  Thus, judicial notice is appropriate for exhibit one and

25  two. *See Victoria*, 326 F. Supp. 3d at 1012.

26  //

27  //

28  //

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## IV.   DISCUSSION

Defendant argues that Plaintiff's claims are barred by claim preclusion.  *Id.* Alternatively, Defendant argues that each claim should be dismissed on independent grounds.  *Id.* at 8–9.

### A. CLAIM PRECLUSION

Defendant first argues that Plaintiff's claims are barred because Plaintiff released her claims in the Class Action settlement agreement.  *Id.* at 13–15; Doc. No. 23 at 3–7.  Plaintiff counters that the settlement agreement does not bar her current claims because they are not "based on the identical factual predicate as [the] underlying . . . claims in the settled class action."  Doc. No. 22 at 13 (quoting *Williams v. Boeing Co.*, 517 F.3d 1120, 1133 (9th Cir. 2008)).

"The preclusive effect of a federal-court judgment is determined by federal common law," when subject matter jurisdiction in the prior case is based on federal question rather than diversity.  *Taylor v. Sturgell*, 553 U.S. 880, 891 & n.4 (2008).  Under the federal doctrine of claim preclusion, "a final judgment forecloses successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit."  *Id.* at 892 (internal quotation marks and citation omitted).  Accordingly, claim preclusion may be brought under Federal Rule of Civil Procedure 12(b)(6).  *See, e.g.*, *Rosenblum v. U.S. Bank, Nat'l Ass'n*, 822 F. App'x 621, 622 (9th Cir. 2020).

### 1. Inadequate Representation

For a settlement agreement to have preclusive effect, the underlying class representative must have adequately represented Plaintiff.  *See Hesse v. Sprint Corp.*, 598 F.3d 581, 588 (9th Cir. 2010).  Plaintiff argues that the Robinsons did not adequately represent her because the Robinsons could not advance their dual tracking claims past summary judgment.  Doc. No. 22 at 14–15.  Defendant does not address this argument in their reply brief.  *See generally* Doc. No. 23.

"Class representation is inadequate if the named plaintiff fails to prosecute

the action vigorously on behalf of the entire class." *Hesse*, 598 F.3d at 589.  A class representative cannot "prosecute the action vigorously" if they do not share the same claims as class members. *See id.* Here, each of Plaintiff's claims are based on the allegation that Defendant was working with Plaintiff to modify the loan but then simultaneously foreclosed on her home, i.e., dual tracking. *See* AC ¶¶ 9–10.  In the Class Action, the Maryland District Court entered summary judgment against the Robinsons for their dual tracking claims.  Doc. No. 22-3 at 17–18.  In doing so, the Maryland District Court found that the Robinsons had no evidence of dual tracking, and that the Robinsons' house had not even been foreclosed. *Id.* Clearly, Plaintiff's claims were not shared with the Robinsons.  Therefore, the Robinsons failed to "prosecute the action vigorously." *Hesse*, 598 F.3d at 589.

The Robinsons did not adequately represent Plaintiff in the Class Action regarding the dual tracking claims.  Accordingly, the settlement agreement cannot have preclusive effect.

### 2. Identity of Claims

Even though the Robinsons were inadequate class representatives, the settlement agreement does not bar Plaintiff's claims for another reason.  Settlement agreements can release a plaintiff's claim only if a traditional claim preclusion analysis has been decided in a defendant's favor. *See id.* at 590 ("Even apart from [inadequate representation], a settlement agreement's bare assertion that a party will not be liable for a broad swath of potential claims does not necessarily make it so"); *see also Cell Therapeutics, Inc. v. Lash Grp., Inc.*, 586 F.3d 1204, 1210–12 (9th Cir. 2009).

"Claim preclusion 'applies when there is (1) an identity of claims; (2) a final judgment on the merits; and (3) identity or privity between the parties.'" *Cell Therapeutics, Inc.*, 586 F.3d at 1212 (9th Cir. 2009) (quoting *Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002)).

//

Defendant contends that the second and third elements have been met.  MTD at 13, 15.  Plaintiff does not argue otherwise.  *See generally* Doc. No. 22 at 11–15.  The Court agrees with Defendant in that the Class Action settlement was "a final judgment on the merits" and that there is "identity or privity between the parties."  *Stewart*, 297 F.3d at 956.  Thus, the Court must only assess whether there is "an identity of claims."  *Id.*

> To determine if there is an "identity of claims," we look to four factors, "which we do not apply mechanistically": "(1) whether the two suits arise out of the same transactional nucleus of facts; (2) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (3) whether the two suits involve infringement of the same right; and (4) whether substantially the same evidence is presented in the two actions."[3]

*Garity v. APWU Nat'l Lab. Org.*, 828 F.3d 848, 855 (9th Cir. 2016) (quoting *Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 987 (9th Cir. 2005)).

Plaintiff's claims and the Robinsons' claims have some factual overlap, which in turn gives rise to similar infringements and evidence.  *See, e.g.*, AC ¶¶ 49–50; *see also* Doc. No. 20-7 ¶¶ 74–76.  But there is no doubt that there is not an identity of claims.  Plaintiff's claims are predicated on dual tracking.  *See* AC ¶¶ 9–10.  Dual tracking requires going through the loan modification process and the foreclosure process.  *Id.* ¶ 78.  The Robinsons could not bring dual tracking claims because, although they went through the loan modification process, Defendant did not push the Robinsons through the foreclosure process.  Doc. No. 22-3 at 17–18.  Hence, Plaintiff and the Robinsons are not alleging infringement of the same right.  Further, the Robinsons' claims did not include any facts related to foreclosure, which are essential to Plaintiff's claims.  In proving these facts, Plaintiff will

---

[3] These factors clarify the disagreement between Plaintiff and Defendant as to what constitutes an "identity of claims."  *Compare* Doc. No. 22 at 13–15 (asserting that an "identity of claims" requires an "identical factual predicate") *with* Doc. No. 23 at 3–7 (arguing that the "identical factual predicate" standard is incorrect, and that the Court should instead test whether the claims "[a]rise [o]ut of the [s]ame [n]ucleus of [o]perative [f]act[s]").

necessarily present different evidence than the Robinsons.

This analysis is like the inadequate representation analysis above.  This is because "[i]t [is] unlikely that a plaintiff['s] . . . claims would ever be based on the identical factual predicate as the claims of a third party who did not adequately represent the class's interests."  *Hesse*, 598 F.3d at 592.  Accordingly, Plaintiff's claims are not barred under a traditional claim preclusion analysis, and the Court turns to the merits.

B. **HOMEOWNER'S BILL OF RIGHTS (HBOR)**

California's Homeowner's Bill of Rights was enacted on January 1, 2013, and "reformed aspects of the state's nonjudicial foreclosure process by amending the California Civil Code to prohibit deceptive and abusive home foreclosure practices." *Bingham v. Ocwen Loan Serv., LLC*, 2014 WL 1494005 (N.D. Cal. 2014).  The statute states in pertinent part:

> If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer at least five business days before a scheduled foreclosure sale, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is pending. A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale or conduct a trustee's sale until any of the following occurs. . . (3) The borrower accepts a written first lien loan modification, but defaults on, or otherwise breaches the borrower's obligations under, the first lien loan modification.

Cal. Civ. Code. § 2923.6(c).

//

//

To avoid dilatory action by borrowers, the HBOR further provides:

> In order to minimize the risk of borrowers submitting multiple applications for first lien loan modifications for the purposes of delay, the mortgage servicer shall not be obligated to evaluate applications from borrowers who have been evaluated or afforded a fair opportunity to be evaluated consistent with the requirements of this section, *unless there has been a material change in the borrower's financial circumstances since the date of the borrower's previous application and that change is documented by the borrower and submitted to the mortgage servicer.*

Cal. Civ. Code § 2923.6(g)(emphasis added).

Defendant contends that section 2923.6(g) of the Homeowner's Bill of Rights does not apply because Plaintiff defaulted on two previous loan modifications. MTD at 9.  Defendant also claims that section 2923.6 does not apply because Plaintiff did not provide sufficient documentation of her alleged change in financial circumstances. *Id*. at 10. According to Defendant, Plaintiff's "hardship letter did not notify Nationstar of any material change in financial circumstances that occurred since her previous loan modification [in 2016] as required by Section 2923.6(g)." *Id*. at 11.

In response, Plaintiff argues that her previous defaults do not affect the applicability of the HBOR because section 2923.6(g) requires lenders like Defendant to comply with HBOR where a borrower provides documentation of a change in financial circumstances, like she had, that occurred after the date of the previous application.  Oppo. at 10-11. She argues that she submitted a letter of hardship around January 16, 2019, in which she described a loss of income after her April 2015 bankruptcy and she submitted paystubs documenting the decrease along with a breakdown of her monthly expenses that reflected net monthly income of $556. Oppo. at 11.

The HBOR does not directly address whether a borrower who has previously defaulted on a prior loan modification is exempt from its protections. An unpublished decision from the Ninth Circuit suggests that the statue requires dismissal of HBOR claims if a borrower has "defaulted under the original loan agreement and defaulted again under the loan Modification Agreement (a 'first lien loan modification')." *Deschaine v. IndyMac Mortg. Services*, 617 Fed.Appx. 690, 694 (9th Cir. 2015). However, a close reading of this provision indicates that it arguably does not look back to prior loan modifications, but instead is forward-looking because it states that a mortgage servicer will not conduct a trustee's sale "until" a borrower defaults on a loan modification.  At least one district court has interpreted the statute in this way, holding that it does not apply to past defaults, but only to the current loan modification application because it "focuses exclusively on future developments that occur after the borrower submits the loan modification application that the lender dual tracks." *Shaw v. Specialized Loan Servicing, LLC,* 2014 WL 12569530 (C.D. Cal. 2014).  This Court has not discovered any binding authority holding that a prior default forecloses the applicability of the HBOR, therefore, Plaintiff's prior defaults are immaterial to the HBOR analysis for purposes of the present motion to dismiss

Regarding Plaintiff's letter of financial hardship, Plaintiff stated in the FAC that after the second loan modification, she "lost her primary source of income as a professor at Central Texas College near the end of 2017."  FAC ¶ 88-89.  She "included in her letter of hardship a breakdown of her gross monthly income, expenses and debt payments. This reflected her decrease in income after losing her teaching position at Central Texas College and showed a monthly net income of $556."  FAC at ¶ 39.

The "Explanation of Hardship" letter from Plaintiff to Defendant is dated January 16, 2019, and states:

//

//

1
2
3
4
5

> My hardship began after my bankruptcy in 2015. My employment is dependent upon classes offered. This is based upon the number of students enrolled and other factors beyond my control. ¶ My intention is to remain living in the property. ¶ My plan is to get current seeking additional employment in order to make the payments. My last option would be to sell the house.

6
7
8
9

FAC Ex. D at 2. Attached to the letter is an income and expenses worksheet, in which she lists her income as $2,175.00 and expenses as $1,619.00, without including the mortgage payment, leaving $556. *Id*. at 3. Plaintiff states she submitted paystubs to Defendant with her Borrower Response Package in addition to the above materials.

10
11
12
13
14
15
16
17
18
19
20
21
22

The documents above demonstrate that Plaintiff has sufficiently alleged a change in her financial circumstances. First, she indicated that the hardship began after her bankruptcy in 2015. Next, she explained the reasons for the change, and provided her income and expenses, along with her paystubs. It would have benefitted Plaintiff to include the specific date upon which her employment with Central Texas College was terminated in the letter, as she alleges that was the cause of her reduced income, however she alleges in the FAC that she included her paystubs which would demonstrate the date of the change in income. *Haynish v. Bank of Amer., N.A.,* 284 F.Supp. 3d 1037, 1043 (N.D. Cal. 2018)(submission of paystubs demonstrating decreased income sufficient to satisfy § 2923.6(g) requirement of material change). Plaintiff has provided "sufficient factual matter" in the FAC "to state a facially plausible claim to relief." *Shroyer*, 622 F.3d at 1041. Accordingly, the motion to dismiss Plaintiff's HBOR claim is denied.

23

### A. FRAUD

24
25
26
27
28

Under Rule 9(b), a plaintiff who alleges fraud in the complaint must "state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed.R.Civ.P. 9(b). A plaintiff must identify "the time, place, and specific content of the false representations as well as the identities of the parties to the

misrepresentation." *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007)(internal quotation marks omitted). "The elements of a cause of action for intentional misrepresentation are (1) a misrepresentation, (2) with knowledge of its falsity, (3) with the intent to induce another's reliance on the misrepresentation, (4) actual and justifiable reliance, and (5) resulting damage." *Daniels v. Select Portfolio Serv., Inc*., 246 Cal. App. 4th 1150, 1166 (2016). "The elements of a claim for negligent misrepresentation are nearly identical. Only the second element is different, requiring the absence of reasonable grounds for believing the misrepresentation to be true instead of knowledge of its falsity." *Id*.

Plaintiff's fraud claims for intentional and negligent misrepresentation must be dismissed, according to Defendant, because they do not identify a specific false statement Defendant knowingly made, upon which Plaintiff relied when she chose not to pursue other options to foreclosure. Mot. at 12. As a result, the claims fail to satisfy the heightened pleading requirements of FRCP 9(b). *Id*. Defendant further argues that "courts do not allow fraud claims based only on a violation of the HBOR." Reply at 9.

According to Plaintiff, the FAC adequately alleges claims for intentional and negligent misrepresentation because she identified representations made by Nationstar that stated she must return documents within the specified timeframes to avoid foreclosure, but it moved forward with the foreclosure despite her submission of the requested documents. Oppo. at 14. She further claims "[i]n actual and reasonable reliance upon Defendant's misrepresentations, Plaintiff submitted and resubmitted documents to Defendant and did not seek out other options to prevent the foreclosure of her home." *Id*. at 17.

Plaintiff has sufficiently asserted the who, what, when, and why to meet Rule 9(b)'s pleading requirements. She stated that Nationstar made the statements in the Borrower's Response Package explaining they will give homeowners a "reasonable date within which missing information" must be provided. This statement indicated

that the homeowners had time before the foreclosure sale to comply with the requirement. See FAC ¶ 128-134. The pertinent statements in the Borrower Response Package as identified by Plaintiff state: "In the event information is missing and the application has not been received too close to a scheduled foreclosure sale to permit us to evaluate your application, we will provide you with a reasonable date within which the missing information must be provided to us." FAC at Ex C.  It continues, "Prior to our receipt of the missing/complete documents, a foreclosure process may be initiated, the foreclosure process will continue until all documents are received unless state law provides otherwise." *Id*.

As Plaintiff describes it, Nationstar twice gave her dates to turn in documents, but they simultaneously moved forward with foreclosure proceedings. On February 14, 2019, Defendant sent Plaintiff a letter giving her until March 15, 2019, to provide her 1099 Tax Statement, along with "one more paystub to determine your income" and a new Year to Date Profit and Loss statement because the one they had was "illegible."  FAC Ex E at 1. Yet, Defendant filed a notice of Trustee's Sale on February 19, 2019.  FAC at Ex F.

Similarly, on March 8, 2019, Defendant sent another letter to Plaintiff, acknowledging receipt of the paystub, but stating that she needed to send in a letter of explanation clarifying the information in her Profit and Loss Statement, along with a statement that it was not in the correct format, and was illegible.  FAC Ex. G at 1. Plaintiff was given until April 7, 2019, to send in the information, yet Defendant continued with the foreclosure sale on March 22, 2019.  From these actions, Plaintiff has sufficiently demonstrated that Defendant made a misrepresentation of fact about the time within which she could produce documents and avoid foreclosure proceedings, and that they intended to induce Plaintiff's reliance on those statements. Plaintiff reasonably relied on those misrepresentations and suffered damage when the home was sold in foreclosure.

Defendant claims that this Court has previously dismissed fraud claims based

only on violations of the HBOR in *Santana v. BSI Fin. Servs., Inc.* 495 F.Supp. 3d 926, 947-48 (S.D. Cal. 2020), however the cases are distinguishable. In *Santana*, Plaintiff alleged Defendant failed to comply with HBOR by "failing to properly review Plaintiffs' loan modification application, failing to provide a written denial and opportunity to appeal, unlawfully proceeding with a trustee's sale a day after Plaintiffs were telephonically informed of the denial, and filing a fraudulent NOD declaration." *Id*. In dismissing the claims for misrepresentation, the Court found that the complaint did not sufficiently allege that Defendants made "misrepresentations of fact" or that Defendant "fraudulently concealed a material fact." *Id*.

In contrast, Plaintiff here has pointed to statements contained within Defendant's Borrower's Package which misrepresent that a borrower may stave off further negative action by responding to requests for additional information by a date certain. Those statements convinced Plaintiff that as long as she was complying with the requests, she did not need to pursue other avenues to avoid foreclosure. Seeming to acknowledge the misrepresentation, Defendant sent Plaintiff a letter dated April 11, 2019, in which it stated "[w]e acknowledge that our loan modification document request letter, dated March 8, 2019, listed a deadline of April 7, 2019, to return the documents to us. **We are currently in the process of attempting to rescind the foreclosure.**" FAC Ex H at 2 (emphasis added). However, Defendant did not rescind the foreclosure and Plaintiff lost her home because the foreclosure was conducted before the stated time for compliance expired. In light of the above, Plaintiff has sufficiently alleged factual content for the Court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Shroyer*, 622 F.3d at 1041, citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). For these reasons, Defendant's motion to dismiss Plaintiff's claims for intentional and negligent misrepresentation is denied.

B. **PROMISSORY ESTOPPEL**

The elements of promissory estoppel are: (1) a clear and unambiguous promise, (2) reliance by the party to whom the promise is made, (3) the reliance is

both reasonable and foreseeable, and (4) the party asserting estoppel is injured by his reliance. *U.S. Ecology Inc. v. State of California*, 28 Cal. Rptr. 3d 894, 905 (Cal. Ct. App. 2005).

Defendant argues that Plaintiff's promissory estoppel claim must fail because she has not identified a clear and unambiguous promise Nationstar made, and then reneged upon. Mot. at 17. Furthermore, Plaintiff has not sufficiently alleged that she relied upon a promise by Nationstar, and as a result, suffered damages. Reply at 12.

Plaintiff counters that Nationstar made a promise to "halt the foreclosure process upon submission of all documents requested by Nationstar by the 'reasonable date' provided by Nationstar." Oppo at 18.

Missing from the present case is a clear and unambiguous promise by Nationstar to cease the foreclosure proceedings while Plaintiff was in the loan modification process of returning requested forms, as Plaintiff alleges. Defendant promised only that it would provide a "reasonable date" to submit document requested for the loan modification: "In the event information is missing and the application has not been received too close to a scheduled foreclosure sale to permit us to evaluate your application, we will provide you with a *reasonable date* within which the missing information must be provided to us." FAC Ex E at 2 (emphasis added). This promise was stated in the initial Borrower Response Package sent on January 21, 2019. *Id*. Ex C. at 2.

In the letter from Defendant to Plaintiff dated February 14, 2021, Defendant listed items needed to complete the file, and stated "[w]e encourage you to return the specified documentation to us by *3/15/2019*," and added "[w]e have provided a *reasonable date* for your client to return the completed Borrower Response Package to us. Please note that we may still review the application if it is received after that date, but the sooner the documents are returned to us, the better." *Id*. Ex E at 2 (emphasis added). On March 8, 2019, Defendant sent a letter requesting additional documents, stating that they should be returned by

April 7, 2019, and noting that they had provided a "reasonable date" for the document return. *Id*. Ex. G at 2.

Although Plaintiff claims Defendant further promised to halt the foreclosure process upon submission of the requested materials before the "reasonable date," she has only identified the above promise, which Defendant met by providing a "reasonable date" in each correspondence. Accordingly, Plaintiff's promissory estoppel claim is dismissed without prejudice and with leave to amend.

### C. UCL CLAIM

California's unfair competition law (UCL) provides for civil recover for "any unlawful, unfair or fraudulent business act or practice…" Bus. & Prof.Code, § 17200. Violations of other laws are actionable as unfair competition under the UCL because it defines "unfair competition" to include any unlawful act or practice. *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co*., 20 Cal.4th 163, 180 (1999). A plaintiff must allege standing to assert a UCL claim, which requires the party to demonstrate "(1) a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e economic injury, and (2) show that the economic injury was the result of, i.e. caused by, the unfair business practice or false advertising that is the gravamen of the complaint." *Kwikset Corp. v. Super.Ct.,* 51 Cal.4th 310, 322 (2011)(citing Cal. Bus. & Prof. Code § 17204).

According to Defendant, Plaintiff's claim for violation of the UCL must be dismissed because she has not sufficiently alleged an unfair business practice and because she lacks standing to bring the claim. Mot. at 18. Specifically, Defendant argues that Plaintiff has not stated a valid claim for violation of the HBOR or any other common law cause of action, therefore the Court must dismiss the derivative UCL claim. *Id*. In Defendant's view, Plaintiff also lacks statutory standing to bring a UCL claim because she claimed that she lost the opportunity to seek foreclosure avoidance due to Nationstar's alleged violations of the HBOR, but a "lost opportunity" is not the type of economic injury required to bring a claim under the

1    UCL.  *Id*. at 19.

2        Plaintiff argues in response that she sufficiently alleged that Defendant

3    violated section 2923.6 of the HBOR, and that her common law intentional and

4    negligent misrepresentation claims have merit because Defendant continued the

5    foreclosure process after Plaintiff submitted a completed application.  Oppo. at 19.

6    Plaintiff claims she has standing to pursue her UCL claim because the allegation that

7    her home was sold at foreclosure is sufficient to satisfy the economic injury prong of

8    the standing requirement under the UCL. *Id*. at 20.   She further alleges that

9    Defendant's misrepresentations about the status of her application, including the

10   misrepresentation that she had until April 9, 2019, to resubmit her Profit and Loss

11   Statement were the cause of her losing her home through a foreclosure sale.  *Id*.

12       As explained above, Plaintiff has sufficiently alleged a violation of the HBOR,

13   and fraud for purposes of the motion to dismiss, therefore, Defendant's request for

14   dismissal based on the derivative nature of the UCL claim is denied. Plaintiff must

15   also demonstrate economic injury to proceed with a UCL claim. She asserts that the

16   sale of her home at the foreclosure sale constitutes economic injury for purposes of

17   the UCL and cites *Lueras v. BAC Home Loans Servicing, LP*, 221 Cal.App. 4th 49

18   (2013), in support.

19       In *Lueras*, the Court held that plaintiff's allegation that his "home was sold at

20   a foreclosure sale is sufficient to satisfy the economic injury prong of the standing

21   requirement." *Id*. at 82. However, plaintiff failed to satisfy the causation requirement

22   there because he did not allege a causal connection between the bank's "allegedly

23   unlawful, unfair, or fraudulent conduct and Luera's economic injury." *Id*.

24   Defendant contends that *Lueras* is not applicable to the current case because the bank

25   explicitly told Lueras that it would not sell the home during the loan modification

26   review but here Plaintiff cannot identify any explicit statement by Nationstar that it

27   would stop foreclosure.

28       However, it is immaterial whether the bank explicitly told the homeowner that

1    it would not sell the home in foreclosure during the loan modification process for

2    purposes of identifying an economic injury to move forward with her UCL claim.

3    The *Lueras* Court made clear that, "[s]ale of a home through a foreclosure sale is

4    certainly a deprivation of property to which a plaintiff has a cognizable claim." *Id*.

5    at 832. Here, Plaintiff lost her home to foreclosure after Defendant continued with

6    the foreclosure sale during the pendency of her loan modification review, therefore,

7    she has alleged an "economic injury" sufficient to satisfy the first prong of the

8    standing analysis.

9        Just as in *Lueras*, the reason Plaintiff's home was ripe for foreclosure was due

10   to her default and that default was not caused by Defendant's alleged

11   misrepresentations regarding the status of her loan modification or the date by which

12   she needed to submit additional documents. *See Morgan v. Aurora Loan Services,*

13   *LLC*, 646 Fed.Appx. 546, 551 (9th Cir. 2016)("As Morgan's foreclosure resulted

14   from her defaulting on her loan prior to defendants' allegedly wrongful acts, she has

15   not stated a claim under the UCL.") Consequently, Defendant's motion to dismiss is

16   granted as to Plaintiff's claim for a violation of the UCL.

17                    **V.    CONCLUSION**

18       For the foregoing reasons, Defendant's motion to dismiss is granted in part,

19   and denied in part. Plaintiff's claims for promissory estoppel and violation of the

20   UCL are dismissed without prejudice and with leave to amend.

21       **IT IS SO ORDERED.**

22

23   Dated:  September 29, 2021

24

25                                              Hon. M. James Lorenz
                                                United States District Judge
26

27

28